UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM J. FOLEY,

        Plaintiff,

v.

CITY OF WALLED LAKE, CAPTAIN J.
ELLSWORTH, DET. SCHNEIDER, P.O.
ANTHONY NOBLE, P.O. SCOTT BOSLEY,
P.O. KENNETH AYERS, OAKLAND CNTY.
DEPUTY JOHN JACOB, VILLAGE OF
WOLVERINE LAKE, KMG PRESTIGE, INC.,
JUDITH A. LESTER, TAMI BASTIEN, MARCIA
STEVENS, DEPUTY LARRY CATANZARO,
SGT. BUFFA, DEPUTY R. CHATTERSON,
OAKLAND CTNY. DET. K. HILLER, LAURA
MASISEVICH, TRINITY HEALTH, KELLY
GREEN, WALLED LAKE VILLA APARTMENTS,
JOHN DOES 1-10,

        Defendants.

Case No. 11-CV-11856
Honorable Denise Page Hood

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND DISMISSING KELLY GREEN FROM THIS ACTION

**I.    INTRODUCTION**

       This is an action brought pursuant to 42 U.S.C. § 1983. Now before the Court is Trinity Health and Laura Maisevich's Motion to Dismiss, filed December 16, 2011, and KMG Prestige, Inc., Walled Lake Villa Apartments, Judith Lester, Tami Bastien, Marcia Stevens, and Kelly Green's Motion to Dismiss and/or Motion for Summary Judgment, filed February 13, 2012. For the reasons stated in more detail below, Trinity Health's Motion to Dismiss is GRANTED IN PART and DENIED IN PART and KMG Prestige's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**II.     BACKGROUND**

Plaintiff is an 81-year-old former Oakland County Commissioner. He brought this action against numerous defendants pursuant to 42 U.S.C. § 1983 on April 27, 2011. Plaintiff amended his complaint on January 30, 2012. The following allegations are relevant to the Court's inquiry:

- Count I – Violation of Civil Rights pursuant to 42 U.S.C. § 1983 against all Defendants;

- Count VII – Conspiracy to Violate Civil Rights pursuant to 42 U.S.C. §§ 1983, 1988 against KMG, Walled Lake Villa Apartments, Trinity Health, Highland Haven, Laura Maisevich, Marcia Stevens, Tami Bastien, and Judith Lester;[1]

- Count VIII.F – Intentional Infliction of Emotional Distress against Laura Maisevich, Deputy Jacobs, Deputy Catanzaro, Detective Hiller, Deputy Chatterson, Marcia Stevens, Tami Bastien, Judith Lester, Officer Ayers, Detective Schneider, Officer Bosley, Officer Noble, and Captain Ellsworth;

- Count IX – Retaliatory Eviction and Breach of Contract in violation of MICH. COMP. LAWS § 600.5720 against KMG and Trinity Health.

**A.     Highland Haven[2]**

In January 2010, Plaintiff contacted his attorney regarding an ongoing contaminated water investigation by the Michigan Department of Environmental Quality (MDEQ) at the H.U.D. operated senior living facility Highland Haven. Plaintiff was a resident there. Trinity Health manages Highland Haven. Plaintiff alleges that Laura Maisevich became angry that Highland Haven was placed on a "boil water" restriction following Plaintiff's complaint.

---

[1] Plaintiff's amended complaint captions Count VII as a 1983 conspiracy action but states the basis is 42 U.S.C. § 1985 in the allegations. Plaintiff did not contest Defendants construing this count as falling under section 1983. The Court will proceed with this claim as it is captioned.
[2] All Defendants associated with Plaintiff's claim against Highland Haven are referred to collectively as the Highland Have Defendants.

Plaintiff further alleges that he contacted H.U.D. regarding rent abatement and forming a tenant's union.

Accordingly to Plaintiff, Maisevich and Deputy Jacobs, under Trinity's direction, conspired against Plaintiff to deprive him of his leasehold estate. Maisevich, Deputy Jacobs, Deputy Catanzaro, Detective Hiller and Deputy Chatterson collected affidavits alleging that Plaintiff was a nuisance. Plaintiff alleges that Maisevich used threat of eviction to collect statements from tenants. She also refused to accept Plaintiff's rent payments for months. Maisevich, Deputy Jacobs, Deputy Catanzaro, Detective Hiller, and Deputy Chatterson advised a tenant to obtain a personal protection order against Plaintiff. Plaintiff's counsel witnessed Deputy Jacobs, with Maisevich and her assistant, counseling and coaching the tenant's testimony. After encountering the tenant in the common area, Plaintiff was arrested by Deputy Jacobs and others as violating the PPO when he told the tenant "I guess I'm not allowed to speak with you." The state court found that Plaintiff had only committed a technical violation and had not intentionally violated the order.

Plaintiff alleges that Maisevich, Deputy Jacobs, Deputy Chatterson, and Detective Hiller conspired to obtain two additional PPOs against Plaintiff. On Good Friday 2010, Plaintiff was jailed and transported to Pontiac Osteopathic Hospital for violating a PPO. The state court later determined that it was only a technical violation. While in jail, Sergeant Buffa denied Plaintiff access to his attorney because Plaintiff's counsel was not the attorney of record. Once released, Plaintiff was arrested at his home for breach of the peace due to the alleged efforts of Maisevich, Deputy Jacobs, Deputy Cantanzaro, and police officers Chatterson and Hiller. The charges were later dismissed.

Three days later, Plaintiff was arrested at his home for breaching the public peace. This

charge was also dismissed.

    **B.    Walled Lake Villa Apartments[3]**

Plaintiff then moved to another H.U.D. property, Walled Lake Villa Apartments, which was managed by KMG Properties. Marcia Stevens, Judith Lester, and Tami Bastien are KMG employees.

Plaintiff observed and reported various safety code violations. From November 2010 until February 7, 2011, Stevens contacted Walled Lake seeking an investigation of Plaintiff. Bastien, working with Maisevich, created a memorandum outlining their plans for Plaintiff. KMG, Lester, and Bastien filed a 7 Day Notice of Hazardous Condition eviction complaint in 52-1 district court, but the state court judge did not sign the writ.

Stevens refused to take Plaintiff's rent check on February 3, 2011. KMG, Stevens, Bastien, and Lester contacted Plaintiff directly despite knowing that counsel represented him. They attempted to evict him on February 5, 2011. Lester counseled Stevens to make a criminal complaint of trespass against Plaintiff and Plaintiff was arrested. On February 7, 2011, Captain Ellsworth came to Plaintiff's residence and arrested him for trespass after Plaintiff went to police when the head of maintenance harassed him. During the course of arrest, officers Ayers, Schnieder, and Ellsworth injured Plaintiff. Plaintiff was arrested again on February 10, 2011, when he attempted to obtain his medicine and personal belongings pursuant to a February 7, 2011 order of release. Officers Bosley, Noble, and Ayers injured him during the commission of the arrest.

**III.    STANDARD OF REVIEW**

---

[3] All Defendants associated with Plaintiff's claim against Walled Lake Villa Apartments are collectively referred to as the Walled Lake Villa Defendants.

A 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants attach several documents to their motion to dismiss: Plaintiff's lease at Walled Lake Villa Apartments; a 52-1 State District Court Consent Order Regarding Possession of Premises; Order of Eviction and Judgment; Affidavit of Kelly Green; a 52-1 State Judicial District Court Order, correspondence from Walled Lake Villa Apartments to Plaintiff and his attorney; and tow slips. When presented with a motion to dismiss, the Court may consider the Complaint and exhibits attached to the Complaint, public records, items in the record of the case, and exhibits attached to the defendant's motion to dismiss as long as they are referenced in the Complaint and central to the plaintiff's claims. *Bassett v. Nat'l Collegiate Ass'n*, 528 F.3d 426, 430 (6th Cir. 2006). The Court may consider items that "verify the complaint" and do "not rebut, challenge, or contradict anything in the plaintiffs' complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993); *Armengau v. Cline*, 7 Fed.Appx. 336, *5 (6th Cir. 2001) ("extrinsic materials [that] merely 'fill in the contours and details' of a complaint, . . . add

nothing new and may be considered without converting the motion to one for summary judgment") (quoting *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)). The Court may also take note of matters of which it could take judicial notice. *Armengau*, 7 Fed.Appx. at *5. Accordingly, the Court will only consider the consent order, order of eviction, and 52-1 district court order. The Court will proceed with Defendants' motion as a motion to dismiss pursuant to Rule 12(b)(6).

## IV.   ANAYLSIS

### A.   Section 1983 Claims

To maintain an action under 42 U.S.C § 1983, a plaintiff must demonstrate that he or she was deprived of a right guaranteed by the Constitution or laws of the United States by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978).

#### 1.   Count I: Violation of Civil Rights

Defendants argue that they are private actors and have not acted under color of state law. Plaintiff contends that there was state action because Defendants acted in concert with state officials to deprive Plaintiff of his constitutional rights. Typically, a plaintiff cannot proceed against a private actor under section 1983. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). However, a private actor may transform into a state actor for the purpose of section 1983 if that individual is "jointly engaged with state officials in the prohibited action." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). "It is enough that [the private actor] is a willful participant in joint activity with the State or its agents." *Id.* "Therefore, a private party can fairly be said to be a state actor if (1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the State' and (2) the offending party 'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'"

*Tahfs*, 316 F.3d at 591 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

The Sixth Circuit recognizes three tests for determining whether private conduct is chargeable to the State: (1) public function test, (2) state compulsion test, and (3) nexus test. *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995). The public function test determines whether a private actor has exercised powers that are traditionally reserved to the State. *Id.* The state compulsion test considers whether the State overtly or covertly coerced the private actor to take a particular action. *Id.* The nexus test requires proof of a sufficiently close relationship between the State and private actor such that the private actor's actions can be attributed to the State. *Id.*

Here, Plaintiff alleges that the Highland Haven Defendants conspired with members of the Oakland County Sheriff's Department to evict him. He further alleges that Maisevich and members of the Oakland County Sheriff's Department acted together to obtain affidavits to build a case for eviction against Plaintiff. They also counseled a tenant to seek a PPO against Plaintiff. He claims that the Walled Lake Villa Defendants conspired with the Chief of Police of the City of Walled Lake to secure his arrest for trespass.

Plaintiff's allegations do not satisfy the nexus or public function tests. He does not claim that there was a close relationship between the private individuals or entities and the State. Nor is there any indication that the private individuals or entities were engaged in some activity that is traditionally reserved to the State. Plaintiff complains of the filing for a PPO and a complaint for possession. Private individuals may participate in such activities to vindicate their own rights before courts. These activities alone are in no way connected to the State or a traditional function of the State. They cannot be attributed to the State.

Furthermore, Plaintiff has not alleged or implied that the Defendants were somehow

coerced by the police officers to engage in a particular action. Plaintiff alleges that the Highland Haven Defendants conspired with the police but describes how Maisevich acted alone in obtaining allegedly false statements. Although Maisevich and the police counseled the tenant together in obtaining a personal protection order, Plaintiff does not allege that Maisevich's decision was somehow attributed to the police coercion. The allegations that a private individual joined with the police to counsel a tenant does not support a claim of State activity. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) ("The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.")

As to the Walled Lake Villa Defendants, Plaintiff argues that the individuals conspired with each other.[4] Absent from the Complaint are any allegations that the Walled Lake Villa Defendants engaged in an activity that was traditionally reserved to the State, had a close relationship with the State, or were somehow coerced into a particular action by the State. The Walled Lake Villa Defendants filed a complaint for Plaintiff's eviction. They acted on their own. There is no indication that their actions were in any way connected to the State. Plaintiff has not state a claim for Count I against either the Walled Lake Villa or Highland Haven Defendants.

### 2.     Count VII: Civil Conspiracy

In Count VII, Plaintiff alleges that Defendants conspired to deprive Plaintiff of his right to engage in free speech and association and to deprive him of his liberty and property rights. Application of the public function, state compulsion, and nexus tests is irrelevant when there are "allegations of cooperation or concerted action between state and private actors." *Memphis,*

---

[4] Plaintiff appears to conflate the analysis for asserting a civil rights violation under section 1983 and alleging civil conspiracy under section 1983. In Count I of Plaintiff's Amended Complaint, he does not allege that the Defendants conspired against him and the Court will not read that into his Complaint.

8

*Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). The Sixth Circuit has articulated the following standard for a conspiracy claim pursuant to section 1983:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). A claim for conspiracy must be plead with specificity. *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987).

Accepting all allegations as true, Plaintiff has sufficiently pled a claim for conspiracy under section 1983. As to the Highland Haven Defendants, Plaintiff alleges that the Defendants had an agreement for an unlawful purpose and engaged in an overt act in furtherance. He asserts that Maisevich and Deputy Jacobs plotted to deprive Plaintiff of his leasehold and Maisevich and several police officers obtained false tenant statements and counseled tenants in getting a PPO in order to deprive Plaintiff of his lease. He also alleges that Maisevich acted under the direction of Trinity and Highland Haven. Plaintiff has alleged facts sufficient to state a claim for conspiracy under section 1983 against the Highland Haven Defendants.

However, Plaintiff's claim as to the Walled Lake Villa Defendants is insufficient. He first alleges that KMG and Stevens called Walled Lake to investigate Plaintiff and convinced Walled Lake and Captain Ellsworth to arrest him. He claims that Bastien and Maisevich acted in concert. His other allegations describe other independent actions by KMG, Stevens, Lester, and Bastien and various police officers. Plaintiff provides no factual support showing a connection between the actions of the Walled Lake Villa employees and KMG to state actors. Standing

alone, Plaintiff's allegations are not enough to plead conspiracy under section 1983.

Trinity, KMG, and Walled Lake Villa contend that they cannot be held vicariously liable under section 1983. Section 1983 does not impose vicarious liability on employers for the acts of its employees. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978). Although *Monell* involved a municipality, its holding is also extended to private corporations. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). A private corporation may be held responsible under section 1983 for an official policy, practice, or custom that causes a constitutional injury. *See Monell*, 436 U.S. at 690.

Plaintiff alleges that Maisevich, Trinity employee, had engaged in similar acts to evict another tenant and that she acted under Trinity's direction when she conspired with the police to evict him. Accepting Plaintiff's allegations as true, Maisevich could have been acting pursuant to a custom. Maisevich was acting under Trinity's direction and another tenant was evicted under the same or similar circumstances. This is enough to state a claim for vicarious liability for civil conspiracy as to Trinity.

Regarding KMG and Walled Lake Villa Apartments, Plaintiff alleges that the Walled Lake Villa Defendants disrupted Plaintiff's access to H.U.D. service coordinators and conducted numerous investigations against Plaintiff between November 2010 and February 2011. He does not allege that KMG and Walled Lake Villa Apartments employees were acting in accordance with some official policy, practice or custom. Nor does Plaintiff allege that KMG or Walled Lake Villa Apartments officials explicitly or implicitly endorsed or willingly ignored the activities that resulted in the alleged violation of Plaintiff's constitutional rights. Notwithstanding Plaintiff's failure to state a claim for conspiracy against the Walled Lake Villa Defendants, Plaintiff cannot hold KMG or Walled Lake Villa Apartments liable for the allegedly

wrongful acts of its employees.

Accordingly, Plaintiff's conspiracy claim against KMG and Walled Lake Apartments fails. Count VII is also inadequate as to Stevens, Lester, and Bastien because he fails to show a connection between them and State actors. Plaintiff has sufficiently stated a claim against Maisevich and Trinity.

### B. State Law Claims

#### 1. Count VIII.F: Intentional Infliction of Emotional Distress

Defendants assert that Plaintiff has failed to state a claim for intentional infliction of emotional distress; Plaintiff has not identified any extreme and outrageous conduct. The Michigan Supreme Court has not explicitly recognized a tort for intentional infliction of emotional distress. *Smith v. Calvary Christian Church*, 614 N.W.2d 590, 593, n.7 (Mich. 2000). However, the court has recognized that a claim could be made under the standard described in the Second Restatements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) plaintiff suffered severe emotional distress. *Robert v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985). The threshold for what is deemed outrageous conduct is high. Conduct is sufficiently outrageous when "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement Torts, 2d., § 46, comment g). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient. *Id.* "[T]he trial judge [initially] decide[s] whether defendant's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress." *Sawabini v. Desenberg*, 372 N.W.2d 559, 565 (Mich. Ct. App. 1985).

Plaintiff alleges that Defendants have solicited false tenant reports, counseled tenants to obtain PPOs, conspired to have Plaintiff arrested, and coached testimony. Whether Defendants' conduct went "beyond all bounds of decency" is a question of fact. The Court will not decide based on Plaintiff's allegations alone whether this conduct was sufficiently extreme and outrageous to permit recovery. At this stage in litigation, Plaintiff has sufficiently stated a claim for intentional infliction of emotional distress.

### 2. Count IX: Retaliatory Eviction & Breach of Contract

Plaintiff makes a claim for retaliatory eviction and breach of contract pursuant to MICH. COMP. LAWS § 600.5720. It states in relevant part:

> (1) A judgment for possession of the premises for an alleged termination of tenancy shall not be entered against a defendant if 1 or more of the following is established:
> (a) That the alleged termination was intended primarily as a penalty for the defendant's attempt to secure or enforce rights under the lease or agreement or under the laws of the state, of a governmental subdivision of this state, or of the United States.
> (b) That the alleged termination was intended primarily as a penalty for the defendant's complaint to a governmental authority with a report of plaintiff's violation of a health or safety code or ordinance.
> (c) That the alleged termination was intended primarily as retribution for a lawful act arising out of the tenancy, including membership in a tenant organization and a lawful activity of a tenant organization arising out of the tenancy.

*Id.* Defendants argue that Plaintiff was not evicted and is precluded by res judicata from making a claim for retaliatory eviction and breach of contract. Trinity contends that Plaintiff was never evicted from Highland Haven, but instead agreed to leave voluntarily after reaching a settlement agreement, which was entered in state court. KMG and Walled Lake Villa Apartments contend that Plaintiff is precluded from setting aside the consent order regarding possession of the premises because Plaintiff consented to termination of his tenancy. Plaintiff argues that res judicata would only bar any action regarding Plaintiff's right to possession. He asserts that his

right to possession is not at issue here. He is contesting Defendants' violation of his rights by initiating an eviction proceeding in retaliation for making complaints.

Res judicata or claim preclusion precludes the re-litigation of a final judgment on the merits in a subsequent action. Res judicata is appropriate when: (1) there is a prior decision on the merits; (2) the present action involves the same parties or their privities; and (3) the present action involves an issue that was litigated or should have been litigated in the previous action. *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001). Essentially, res judicata bars "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* Res judicata is applicable if there is an identity of issues, such that there are identical facts or the same evidence would sustain both the first and second action. *In re Koernke Estate*, 425 N.W.2d 795, 796 (Mich. Ct. App. 1988). The doctrine of res judicata also applies to consent orders or settlement agreements. *Ditmore v. Michalik,* 625 N.W.2d 462, 466 (Mich. Ct. App. 2001). A district court's summary judgment order is "conclusive on the narrow issue whether the eviction was proper." *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001).

Plaintiff voluntarily left Highland Haven and Walled Lake Villa Apartments pursuant to a settlement agreement or consent order. He was not evicted. Nevertheless, Plaintiff is barred by res judicata. Plaintiff is asserting relief under MICH. COMP. LAWS § 600.5720. Section 5270 by its very terms provides a defense for a tenant who is being evicted in retaliation to contest the landlord's right to possession. Plaintiff cannot base his claim for retaliatory eviction on this statute and argue that he is not challenging his right to possession. Plaintiff should have asserted this defense during the summary proceedings in the district court. When the district court

13

entered the consent and settlement agreements, it foreclosed his opportunity to rely on that defense here. Count IX is dismissed.

### 3. Defendant Kelly Green[5]

The Walled Lake Village Defendants argue that Kelly Green should be dismissed from the action because Plaintiff has not made any factual allegations against her. Plaintiff does not contest this argument. Green is mentioned only once in the Complaint as a H.U.D. employee. Plaintiff makes no factual allegations against her. She is dismissed from this action.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Trinity Health and Laura Maisevich's Motion to Dismiss [Docket No. 40, filed December 16, 2011] is **GRANTED IN PART** and **DENIED IN PART**. Trinity Health and Laura Maisevich are dismissed from Count I of the Amended Complaint. Count IX is dismissed as to Trinity Health.

**IT IS FURTHER ORDERED** that KMG, Walled Lake Villa Apartments, Judith Lester, Tami Bastien, Marcia Stevens, and Kelly Green's Motion to Dismiss and/or Motion for Summary Judgment [Docket No. 54, filed February 13, 2012] is **GRANTED IN PART** and **DENIED IN PART**. KMG, Walled Lake Villa Apartments, Judith Lester, Tami Bastien, and Marcia Stevens are dismissed from Counts I and VII. Count IX is dismissed as to KMG and Walled Lake Villa Apartments. Defendant Kelly Green is **DISMISSED** from this action.

**IT IS SO ORDERED**.

Dated: September 25, 2012          s/Denise Page Hood
                                                      DENISE PAGE HOOD
                                                      UNITED STATES DISTRICT JUDGE

---

[5] Defendants attach the affidavit of Kelly Green to support their argument that she is not a H.U.D. employee. The Court is construing Defendants' motion as a motion to dismiss and will not consider Green's affidavit.

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Tuesday, September 25, 2012, by electronic and/or ordinary mail.

                                             s/LaShawn Saulsberry
                                             Case Manager