## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WILLIAM J. FOLEY,

        Plaintiff,

v.
                                 Case No. 11-CV-11856
                             Honorable Denise Page Hood

CAPTAIN J. ELLSWORTH,
P.O. KENNETH AYERS, and the
VILLAGE OF WOLVERINE LAKE

        Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [#77]

## I.   INTRODUCTION

       This is an action brought pursuant to 42 U.S.C. § 1983.  Now before the Court is remaining Defendants, Village of Wolverine Lake, Captain John Ellsworth, and Officer Kenneth Ayres' Motion for Summary Judgment, filed May 16, 2013. **[Docket No. 77]** Plaintiff filed a response to this motion **[Docket No. 79, filed June 6, 2013]** to which Defendants filed a reply **[Docket No. 81, filed June 20, 2013]**.  For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## II.   BACKGROUND

1

Plaintiff is an 81-year-old former Oakland County Commissioner. He brought this action against numerous defendants pursuant to 42 U.S.C. § 1983. The events most relevant to the instant Motion occurred on or about February 7, 2011, though for context purposes, it is important that the Court discuss events that occurred before this date.

Plaintiff was a resident at H.U.D. property, Walled Lake Villa Apartments ("Walled Lake"). Plaintiff alleges that he observed and reported various safety code violations at this living community. A "7 Day Notice of Hazardous Condition" eviction complaint was filed against Plaintiff but the state court judge did not sign the writ. On February 4, 2011, Plaintiff received what was titled a "Notice Regarding Trespass and Restricted Use of Common Area of Building While Termination of Tenancy Action is Pending." **[Docket No. 77, Pg ID 785]** Plaintiff was notified that, pursuant to M.C.L. 750.552, Walled Lake had "determined that [he was] interfering with the operation of [the] community to the extent that management and some residents [felt] threatened in the common areas of the building." Plaintiff was told that his use of the common areas was restricted and that any violation of use would be "considered a trespass pursuant to 750.552." More specifically, Plaintiff was directed:

> 1. You are not to approach, enter or use any doors to rooms
> or areas designated for management employees, staff,
> maintenance, vendors, utility rooms or other areas used by

2

outside contractors.

2. You are not to enter/tamper with or interfere with the use of the elevator.

3. You are not to touch (turn on or off) any light switch located in any common use area of the building, including hallways, community room, kitchen.

4. You are not to enter the office, stand in any doorway, or approach any person employed or providing services to your landlord or its residents except in an emergency situation.

5. If you interfere with any residents' access to or use of common area facilities, threaten to sue, harm, or attempt to intimidate anyone, we will move to restrict your access from those common areas.

**[Docket No. 77, Pg ID 785-86]**

On February 5, 2011, with an Oakland County Sheriff, Walled Lake attempted to evict Plaintiff on the "7-Day Health Hazard Notice." On February 7, 2011, Plaintiff had contact with someone at the Walled Lake Police Department where he asked to speak with the captain "for some relief and acknowledgment of his right of occupancy." **[Docket No. 47, Pg ID 439]** Plaintiff acknowledges that he likely did not actually speak with the captain/chief, Defendant Ellsworth. **[No. 77, Pg ID 794]** At some time later that day, Marcia Stevens, Walled Lake's building manager placed a call to the Walled Lake Police Department to report "a disorderly person/trespassing." **[Docket No. 77, Pg ID 780]** Ms. Stevens told the officers that this was "an ongoing problem" with the Plaintiff and that Plaintiff continued to

"occupy one of the 2 elevators and refuse[d] to leave or allow anyone else to use it."
**[Id.]** She stated that Plaintiff "would hold the elevator door open in the Lobby and continued to harass the residents in the lobby by yelling at them and creating a disturbance." **[Id.]** Plaintiff disagrees that he kept anyone from using the elevator.
**[Docket No. 77, Pg ID 796]**  Police Chief John Ellsworth and Police Officer Kenneth Ayres responded to the dispatch call.

Upon arriving at Walled Lake, the officers state that they were informed that Plaintiff "was trespassing at the location and was not supposed to be" there. **[Docket No. 77, Pg ID 771, 776]** The Officers were told that Plaintiff had gone to a third floor apartment, where the officers went to find him.  They knocked on the door and they were given permission to enter the apartment by the resident, Tom Kallao, who identified Plaintiff as "Foley." **[Docket No. 77, Pg ID 794]**  Plaintiff was in the apartment and, upon entrance by the officers, was notified that a report had been made that he was being disorderly and had been trespassing on the property.  Plaintiff was told that he "had to leave the premises." **[Id., Pg. ID 771, 777]** Plaintiff was notified that if he did not leave the premises he could be "subject to arrest." **[Id. at 777]** Officer Ayres states that at this point, Plaintiff became "agitated and uncooperative." **[Id. at 777]** The Police report states that after the officers told Plaintiff that he could be arrested for his behavior, Plaintiff "jumped up out of his chair toward the officers

4

and stuck out his wrists stating 'Take me to Jail then.'" **[Docket No. 77, Pg ID 780]**
At his deposition, Plaintiff stated that he "might have" responded in this way, that if
someone threatens to arrest him, his usual response is "Let's have at it" or "Cuff me
and take me to jail." **[Docket No. 77, Pg ID 797, 798]**  Plaintiff was arrested and
taken to jail.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317,
322 (1986).  The moving party bears the burden of demonstrating that summary
judgment is appropriate.  *Equal Employment Opportunity Comm'n v. MacMillan
Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974).   The Court must
consider the admissible evidence in the light most favorable to the nonmoving party.
*Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most
favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts."
*Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added).  To create a genuine issue
of material fact, the nonmovant must do more than present "some evidence" of a

disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

## IV.   ANALYSIS

In his Amended Complaint **[Docket No. 32, filed November 4, 2011]**, Plaintiff states ten claims for relief, eight of which remain as to these Defendants: (Count I) - Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983; (Count II) - Violation of Civil Rights Under 42 U.S.C. § 1983 Municipal Liability (Failure to Implement Appropriate Policies, Customs, and Practices); (Count III) - Violation of Civil Rights 42 U.S.C. § 1983 (False Arrest); (Count IV) - Violation of Civil Rights 42 U.S.C. § 1983 (Deprivation of Property Without Due Process of Law); Count V - Supervisory Liability, 42 U.S.C. § 1983 Deprivation of First, Fourth, and Fourteenth Amendment

Rights; (Count VI) - Violation of 42 U.S.C. § 1983 (Malicious Prosecution); (Count IX) - State Law Claims Pursuant to M.C.L. § 691.1401 *et seq.* for (a) False Arrest, (b) False Imprisonment, (c) Conversion, (d) Conversion, (e) Assault and Battery, and (f) Intentional Infliction of Emotional Distress; and (Count XI) - Intentional Infliction of Extreme Emotional Distress.  On July 22, 2013, Plaintiff filed a Notice of Voluntary Dismissal of Plaintiff's State Claims Against Defendant Ellsworth. **[Docket No. 83]**

    In their Motion for Summary Judgment, Defendants argue that Plaintiff's claim for liability as to the Village of Wolverine Lake regarding its alleged failure to train and supervise its officers should be dismissed because Plaintiff has failed to provide any evidence that established municipal liability.  Regarding the state law claims, Defendants contend that Plaintiff's claims should fail because Captain Ellsworth has absolute governmental immunity[1] and Officer Ayres is entitled to qualified immunity. Defendants also assert that Plaintiff's federal law claims should fail because Defendants Ellsworth and Ayres are also protected by the doctrine of qualified immunity.  In response, Plaintiff argues that: (1) Defendants are not entitled to summary judgment on Plaintiff's false arrest claim because they did not have the

---

[1]

    As stated above, the state law claims against Defendant Ellsworth are dismissed by the Plaintiff.

authority to arrest him; (2) Defendants are not entitled summary judgment on Plaintiff's malicious prosecution claim because they lacked probable cause to allow a prosecution to be maintained against Plaintiff; (3) Defendants are not entitled to summary judgment on plaintiff's civil conspiracy claim[2] because it is reasonable to believe that their decision to arrest Plaintiff for a misdemeanor not committed in their presence was done in concert with Walled Lake Villa staff who sought to have Plaintiff evicted; (4) Defendant Wolverine Lake is not entitled to summary judgment on Plaintiff's municipal liability claim because its failure to implement adequate policies, procedures, or training lead to Ellsworth and Ayres violating Plaintiff's rights; and (5) Defendants are not entitled to immunity from Plaintiff's claims because their actions were not undertaken in good faith and Plaintiff's right to be free from arrest and prosecution that was completely lacking in probable cause was clearly established.

### A.    Municipal Liability - The Village of Wolverine Lake and Chief Ellsworth (Count II) and Supervisory Liability (Count V)

This claim implicates the principles set forth *in Monell v. Department of Social*

---

[2]

Plaintiff discusses the civil conspiracy claim as against these Defendants in his response. The Court notes that Plaintiff's Complaint does not name Ellsworth, Ayres, or the Village of Wolverine Lake as violative of conspiracy. The Court will not address this issue and any claim for relief as to conspiracy against these Defendants is dismissed.

*Services*, 436 U.S. 658, 694 (1978). In *Monell*, the Supreme Court explained that municipal liability under § 1983 may only attach where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of. To obtain relief on this claim, Plaintiff must prove two basic elements: (1) that a constitutional violation occurred; and (2) that the Village of Wolverine Lake "is responsible for that violation." *Doe v. Claiborne Cty.*, 103 F.3d 495, 505–06 (6th Cir. 1996). This Court need not first decide whether Plaintiff suffered a deprivation of his constitutional right to be free from arrest and/or prosecution because it finds that even assuming that a constitutional violation occurred, the Village of Wolverine Lake cannot be held liable for it.

To assert a § 1983 claim on the basis of a municipal custom or policy, Plaintiff must "identify the policy, connect the policy to the [Village of Wolverine Lake] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.), *cert. denied*, 510 U.S. 1177 (1994). Here, viewing the facts in the light most favorable to the Plaintiff, the Court is satisfied that he fails to point to any particular written policy, custom, or procedure that the Village of Wolverine Lake has that could have lead to the alleged claims of false arrest, malicious prosecution, or Plaintiff's state law claims.

9

Plaintiff is correct that "inadequacy of police training may serve as the basis for § 1983 liability." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). However, this is "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389.

The main issue before the Court on this claim is whether Plaintiff has alleged sufficient facts to establish that the alleged constitutional violation happened "*because of* the execution" of a police that the Village of Wolverine Lake has. *Garner*, 8 F.3d at 364 (emphasis added). Plaintiff must show "a direct causal link" between the policy and the alleged constitutional violation such that the Village's "deliberate conduct" can be deemed the "moving force" behind the violation. *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). This showing is "necessary to avoid de facto respondeat superior liability explicitly prohibited by Monell." *Doe*, 103 F.3d at 508. Applying these standards, this Court concludes that Plaintiff has failed to establish the requisite causal link between any Village of Wolverine Lake policy and the alleged

10

constitutional violations. Count II of Plaintiff's Complaint is **DISMISSED**. For the same reasons, Count V of Plaintiff's Complaint is **DISMISSED**. Defendants' Motion in this regard is **GRANTED**.

### B.    Section 1983 Claims, Counts I, III-VI

To maintain an action under 42 U.S.C § 1983, a plaintiff must demonstrate that he was deprived of a right guaranteed by the Constitution or laws of the United States by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). Plaintiff's remaining § 1983 claims against Defendants are his overarching claim of a violation of his civil rights, his claim for false arrest, his claim for deprivation of property without due process, and malicious prosecution. Determining that Plaintiff's claim for deprivation of property without due process of the law is without merit as to these Defendants, Count IV of Plaintiff's Complaint is **DISMISSED**.

"Qualified immunity provides 'that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity is an entitlement not to stand trial or face the other

burdens of litigation," *Saucier v. Katz*, 533 U.S. 194, 200 (2001), and immunity from suit, not merely a defense to liability. *See id.* at 200–01. Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006) (citation omitted).

Summary judgment based on qualified immunity is generally proper if the law did not put the actor on notice that his conduct would be clearly unlawful. *See Higgason v. Stephens,* 288 F.3d 868, 876 (6th Cir. 2002). In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the Supreme Court set forth a two-part test for determining whether a defendant is entitled to qualified immunity. The *Saucier* Court found that the district court should determine: (a) whether the defendant violated a constitutional right; and (b) if a constitutional right was violated, whether the right violated was clearly established. *Id.* at 201. If the Court finds that genuine issues of material fact exist as to whether the actor committed acts that would violate a clearly established right, then summary judgment is improper. *Poe v. Haydon*, 853 F.2d 418, 425–26 (6th Cir. 1988). If the plaintiff fails to establish either of the two requirements set forth in Saucier, then qualified immunity applies. *See Saucier*, 533 U.S. at 201.

In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that the two-part test set forth in *Saucier* is no longer mandatory. Instead, the Court found that judges should be allowed discretion in deciding which of the two parts of the qualified

12

immunity test to address first, in light of the circumstances of each case. *Id.* The Supreme Court noted that the *Saucier* application of the test—first deciding whether a right was violated, and then deciding whether the right was clearly established—is often the appropriate method. *Id.* "For qualified immunity to be surrendered, pre-existing law must dictate, that is, *truly compel* (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstance." *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997).

The Court will first dispose of Plaintiff's Count V claim, deprivation of property without due process of law. Plaintiff contends that Defendants Ellsworth and Ayres "intentionally, maliciously, and wantonly disregarded [his] property rights and amounted to deprivation of property in violation of the Fourth and Fourteenth Amendments by evicting him from his leasehold and seizing his van." **[Docket No. 32, Pg ID 249]** Plaintiff has not provided the Court with any information that would lead it to believe that these Defendants were involved with Plaintiff's eviction process. Further, as Plaintiff's deposition testimony states, "as far as [Plaintiff] recall[ed]" his truck was not impounded on the day of his arrest. **[Id. at 803]** The Court has no reason to believe— and Plaintiff has provided none—that these officers were in any way involved with the impounding of Plaintiff's truck on February 10. For these

13

reasons, the Court finds no deprivation of property and Count IV of Plaintiff's Complaint is **DISMISSED**. Defendants' Motion in this regard is **GRANTED**.

The gravamen of Plaintiff's remaining § 1983 claims of relief are that Defendants violated his civil rights by arresting him without probable cause that he committed a crime and Defendants' decision to arrest and detain him violated his right to be free from false arrest and violated his rights pursuant to the Fourth and Fourteenth Amendments. Plaintiff further contends that Defendants are not entitled to summary judgment pursuant to governmental immunity because their actions were not undertaken in good faith.

Here, the Officers arrested Plaintiff following a phone call claiming that he was trespassing on the property and was disorderly. This is undisputed. Under the circumstances present in this case, a question of fact exists as to whether a reasonable officer could have believed that he had probable cause to arrest Plaintiff for trespassing and that his actions were lawful. There is no indication on the record before the Court that at the time of his arrest, Plaintiff was doing anything illegal or, as written in the police report, trespassing or disturbing the peace. Plaintiff was arrested in the apartment of his friend, Tom Kallao, and Mr. Kallao did not report to the officers that Plaintiff was trespassing in his apartment. The officers were called by building manager Marcia Stevens on a report of trespassing and disorderly

14

conduct.  Because the Court believes genuine issues of material fact exist surrounding the reason for Plaintiff's arrest and whether he in fact was trespassing or disorderly, the officers are not entitled to qualified immunity at this stage.

The Fourth Amendment protects the right of individuals to be free from improper arrest and detention.  U.S. Const. amend. IV ("The right of people to be secure in their persons . . . against unreasonable seizures . . . shall not be violated."). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense *has been* or is being committed," *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004), and the "validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo*, 443 U.S. 31, 36(1979) (emphasis added).  Accordingly, "[i]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999)).

"Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The inquiry "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the

15

arrest," *Devenpeck*, 543 U.S. at 152, where supported by "reasonably trustworthy information." *Beck*, 379 U.S. at 91. No overly-burdensome duty to investigate applies to officers faced with the prospect of a warrantless arrest. Officers need not "investigate independently every claim of innocence" in initially formulating probable cause. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).

After the officer determines, on the basis of the facts and circumstances known to him, that probable cause exists, the officer has no further duty to investigate or to search for exculpatory evidence. *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999). The initial probable cause determination must be founded on "both the inculpatory and exculpatory evidence" known to the arresting officer, *Gardenhire*, 205 F.3d at 318, and the officer "cannot simply turn a blind eye toward potentially exculpatory evidence." *Ahlers*, 188 F.3d at 372  "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Fridley*, 291 F.3d at 872 (quotation marks omitted).

As discussed above, Plaintiff was arrested in the building where he was a resident. On its face, this fact alone would ordinarily preclude qualified immunity because, as Plaintiff notes, the Michigan trespass statute, M.C.L. § 750.552 requires one to have "enter[ed] the . . . premises *of another* without lawful authority after having been forbidden to do so by the owner or occupant or the agent of the owner or

occupant." However, the Court notes that this is not the ordinary trespass case in that, though Plaintiff was a rightful occupant of the building, he had been directed that his use of the common areas was limited due to past infractions and further, he was told that his actions were, if continued, going to be considered a violation of Michigan's trespass statute.

To prevail on a claim of false arrest, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause. *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18, 672 N.W.2d 351, 362 (2003). Though there is no indication—and Plaintiff has not made the argument—that at the time of his arrest the officer's knew Plaintiff to be a resident of Walled Lake, based on the facts of this specific case, the Court is persuaded that viewing the Complaint in the light most favorable to Plaintiff and assuming that he in fact had not prevented others from using the elevator, Plaintiff has raised a question of fact as to what, if anything, would have given the officers reason to believe that their arrest of Plaintiff was committed with probable cause when it was based only on the phone report and the notice provided. Because, the Court is persuaded that Plaintiff has met his burden of showing that Defendants should not be afforded qualified immunity protection on this claim, Count III of Plaintiff's Complaint **REMAINS**; Defendants' Motion in this regard is **DENIED**.

17

For the same reason the Court finds that Plaintiff has met his burden of showing that Defendants should not be afforded qualified immunity protection on Plaintiff's claim for false arrest, the Court finds Plaintiff's claim for malicious prosecution is sufficiently plead.  In an action for malicious prosecution, the plaintiff has the burden of proving (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his action, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. *Matthews v. Blue Cross & Blue Shield of Michigan*, 456 Mich. 365, 378, 572 N.W.2d 603 (1998).  The Court is satisfied that Plaintiff has met the first two prongs of the test.  Defendants arrested Plaintiff and completed the police report under which he was charged.  The proceedings against Plaintiff were also dismissed.  As noted above, Plaintiff has sufficiently raised a question of fact as to whether the officers had probable cause to arrest him and, therefore, there also remains a question of fact as to whether the officers arrested him in good faith.  The Court determines that—based on the circumstances of this particular case—questions of fact remain regarding Plaintiff's claim for malicious prosecution.  Count VI of Plaintiff's Complaint **REMAINS**; Defendants' Motion in this regard is **DENIED**.

18

For the reasons discussed above, Count IV of Plaintiff's Complaint seeking 42 U.S.C § 1983 relief for deprivation of property without due process of law is **DISMISSED**. Counts I, III, and VI of Plaintiff's Complaint, seeking 42 U.S.C § 1983 for false arrest, malicious prosecution, and generally, **REMAIN** and Defendants' Motion in this regard is **DENIED**.

### C.     State Law Claims

Plaintiff makes state law claims for false arrest, false imprisonment, two counts of conversion, assault and battery, and intentional infliction of emotional distress. The Court notes that for the same reasons the Court finds qualified immunity relief is not available for Defendant Ayres on the federal claim of false arrest, Plaintiff's state law claim for false arrest **REMAINS**. Because Plaintiff's claim for false arrest survives, false imprisonment claim also **REMAINS**. Defendants' Motion in regard to these claims is **DENIED**.

As to Plaintiff's state law claims of conversion, for the reasons that the Court did not find a deprivation of property above, Plaintiff's state law claims for conversion are **DISMISSED**. Plaintiff has failed to show that genuine issues of material fact exist as to whether Defendant Ayres was involved in his eviction proceeding or that he was involved with the impounding of his truck.

Plaintiff's remaining state law tort claims must also be dismissed on a grant of

19

summary judgment. The Court notes that, as a general rule pursuant to Michigan law, intentional torts are not protected by governmental immunity. However, governmental actions which would normally constitute intentional torts are protected by governmental immunity if those actions are justified. *See Brewer v. Perrin*, 132 Mich. App. 520, 528, 349 N.W.2d 198 (1984). Specifically, a police officer may use reasonable force when making an arrest. *Id.* Plaintiff alleges that the Defendants used unreasonable force by "bending his nose to down to his knees and handcuffing him from the rear," **[Docket No. 77, Pg ID 802]** committing an assault and battery. However, the Court notes that Plaintiff has not claimed any outrageous actions during the arrest either in his Complaint or his deposition and acknowledges that he was not kicked, punched, or hit. **[Id.]** Though the court is satisfied that being kicked, punched, or hit are not the only acts that can satisfy an assault and battery claim, the use of handcuffs, by itself, is not the type of unreasonable force necessary to satisfy this claim. *Id.* at 529, 349 N.W.2d 198. Because Plaintiff has not made a prima facie showing of unreasonable force by the arresting officers, this Court grants summary judgment on the assault and battery claim.

Similarly, Plaintiff has failed to make a *prima facie* showing on his intentional infliction of emotional distress claim as Plaintiff has not identified any extreme and outrageous conduct. The Michigan Supreme Court has not explicitly recognized a tort

20

for intentional infliction of emotional distress. *Smith v. Calvary Christian Church*, 614 N.W.2d 590, 593, n.7 (Mich. 2000). However, the court has recognized that a claim could be made under the standard described in the Second Restatements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) plaintiff suffered severe emotional distress. *Robert v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985). The Court notes that the threshold for what is deemed outrageous conduct is high. Conduct is sufficiently outrageous when "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement Torts, 2d., § 46, comment g). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient. *Id.* "[T]he trial judge [initially] decide[s] whether defendant's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress." *Sawabini v. Desenberg*, 372 N.W.2d 559, 565 (Mich. Ct. App. 1985).

Here, Plaintiff's claim for relief is based on the officers "taking away . . . his liberty, the conversion of his vehicle, the taking of his liberty by false imprisonment, deprivation of his property rights, threats of imminent bodily harm, malicious prosecution and intentional infliction of emotional distress." **[Docket No. 32, Pd ID**

21

252]** Because the Court is satisfied that Plaintiff has failed to make sufficient claims of extreme and outrageous conduct, intent or recklessness, or that he has suffered severe emotional distress, Plaintiff's claim for relief based on intentional infliction of emotional distress is **DISMISSED**.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants the Village of Wolverine Lake, Captain John Ellsworth, and Officer Kenneth Ayres' Motion for Summary Judgment **[Docket No. 77, filed May 16, 2013]** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that as to Plaintiff's claims for relief pursuant to 42 U.S.C § 1983, Counts II, IV, and V of Plaintiff's Complaint are **DISMISSED**. Defendants' Motion as to these claims is **GRANTED**.   Counts I, III, and VI **REMAIN**.  Defendants' Motion as to these claims is **DENIED**.

**IT IS FURTHER ORDERED** that as to Plaintiff's state law claims for relief, Counts IX is **DISMISSED** as to Plaintiff's claims for conversion, assault and battery, and intentional infliction of emotional distress.  As to Plaintiff's state law claims for false arrest and false imprisonment, Count IX of Plaintiff's Complaint **REMAINS**

22

against Defendant Ayres.  Defendants' Motion in this regard is **DENIED**.

     **IT IS SO ORDERED**.

               S/Denise Page Hood_____
               Denise Page Hood
               United States District Judge

Dated:  March 31, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2014, by electronic and/or ordinary mail.

               S/LaShawn R. Saulsberry_____
               Case Manager